## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY A. SAVIDGE                          :
                                         :
                          Plaintiff      :
            v.                           :      3:08-cv-2123
                                         :      (JUDGE MARIANI)
PATRICK R. DONAHOE,                      :
Postmaster General                       :
                                         :
                          Defendant      :

## MEMORANDUM AND ORDER

On November 24, 2008, Plaintiff Gary A. Savidge ("Plaintiff") filed a

Complaint ("Complaint") against his then employer, the United States

Postal Service ("USPS"), alleging violations of the Rehabilitation Act, 29

U.S.C. § 791, *et seq.* ("RA"). Specifically, Plaintiff alleges that he was

wrongfully denied his request to transfer from his job as a mail sorter to a

custodial position within the USPS. The nominal defendant, Patrick R.

Donahoe ("Defendant"), denies that USPS's hiring personnel did anything

inconsistent with the mandates of the RA and that the denial of Plaintiff's

request was proper. On April 15, 2011 Defendant filed the instant Motion

for Summary Judgment (Doc. 45), and for the reasons set forth below, the

Court will deny Defendant's motion.

## BACKGROUND

At the time Plaintiff filed his Complaint, he was a 43 year old Gulf War veteran with over 14 years of experience with the USPS. (*See* Compl. ¶¶ 8-10, ECF Dkt. 1.) Plaintiff alleges that he suffers from several disabilities as a result of his military service in the Persian Gulf. (*See* Compl. ¶ 12.) Specifically, Plaintiff maintains that he "has been diagnosed with Fibromyalgia and Peroneal Nerve Palsy in the right leg, which constitutes disabilities under the Rehabilitation Act." (*See* Compl. ¶ 12.) Plaintiff further maintains that the "United States government has rated him 70% disabled based on his ailments following his service to our county." (Compl. ¶ 13.) Plaintiff also avers that he walks with a noticeable limp.

Plaintiff worked for the USPS as a mail sorter, but asserts that he applied for an internal transfer to a custodial position because such a move would alleviate certain physical stresses caused by his alleged disabilities. For instance, Plaintiff testified at his deposition that the high-paced "wear and tear" of a clerk's position would be alleviated by a transfer to a slower-paced custodial job. (*See* Savidge Dep. Tr. 37:11-17, ECF Dkt. 55-1.) Plaintiff also testified that he sought the position because it would afford him greater earning potential within the USPS. (*See id.* at 37:3-8.) Plaintiff

applied for two separate custodial positions with USPS and was denied both times.

Plaintiff further alleges that USPS maintenance manager Fredrick Franco ("Franco") made the discriminatory comment that "all he needed was another 'Gene Pollack,' who is a disabled veteran [who] was forced into retirement." (*See* Compl. ¶ 14.) It is further alleged that Franco also commented that Plaintiff "could not do the job and that [Plaintiff] could not even climb a ladder." (*See* Compl. ¶ 15.) Plaintiff argues that Franco hired applicants with test scores below those obtained by Plaintiff and refused to interview Plaintiff while interviewing individuals with lower scores. (*See* Compl. ¶¶ 22-23.) Plaintiff maintains that the USPS knew that Plaintiff "had a disability, and/or had a record of impairment, and/or regarded him as disabled." (*See* Compl. ¶ 17.) Plaintiff avers that he "is significantly limited in the major life functions of, including but not limited to car[ing] for oneself/working, walking, and work[ing]." (*See* Compl. ¶ 18.) Plaintiff further avers that "[a]t all times material hereto, [Plaintiff] was able to perform the essential functions of the custodial position with or without accommodations." (*See* Compl. ¶19.)

In March 2007, when Franco became maintenance manager, the prior manager provided him with a file containing all requests for transfer,

3

which were supposed to contain only those names of persons who had obtained a passing score on a custodial examination. (*See* Franco Declaration ¶ 31, ECF Dkt. 45-4.) On May 22, 2007, the USPS received approval to fill a vacant custodial position. (*See id.* at ¶ 24.) Another employee who had not yet passed the test, Jones, was mistakenly placed in the folder by Franco's predecessor. (*See id.* at ¶¶ 66-69.) When Franco reviewed the file, Jones was considered first for the position because his request for transfer was dated May 6, 2005. (*See id.* at ¶ 32.) This predated Plaintiff's request for transfer dated November 9, 2006. (*See id.* at ¶ 33.) Defendant contends that Jones had an acceptable work, attendance, and safety record, and thus, on September 15, 2007, Jones was reassigned to the custodial position. (*See id.* at ¶¶ 35-36.) The custodial examination was suspended in November 2007. (*See id.* at ¶ 37.)

When another position became available, Franco again reviewed the file and found the requests of four union craft employees: Plaintiff, Tim Bailey, Charles Greenly, and Joe Carney. (*See id.* at ¶¶ 39-41.) Franco reviewed their work, attendance, and safety records, and concluded that none of the applicants had acceptable attendance records. (*See id.* at ¶ 42.) Franco sought permission to bypass all four applicants from Labor

Relations and Human Resources ("HR").  (*See id.* at ¶ 52.)  Both Labor

Relations and HR approved the bypass after a review of the applicants'

files.  (*See id.* at ¶ 54.)  This review indicated that Plaintiff took scheduled

and unscheduled Family Medical Leave Act ("FMLA") leave in 2006 and

2007, but such time was not factored into the attendance analysis.  (*See id.*

at ¶¶ 45-47.)  In 2006, Plaintiff used unscheduled emergency annual leave

five times and unscheduled leave three times.  (*See* Kathy Gill Declaration

¶ 30, Exh. 3-4, ECF Dkt. 45-4.)  In 2007, Plaintiff used emergency annual

leave six times and unscheduled leave twelve times.  (*See id.*)  Defendant

alleges that Plaintiff had a pattern of taking such leave in conjunction with a

holiday or scheduled days off.  (*See id.*)  All four candidates were advised

that they were being bypassed as a result of unacceptable attendance

records.  (*See id.* at ¶ 71)  Plaintiff was notified by letter on January 29,

2008, that he was being bypassed.  (*See id.* at ¶ 72.)

## STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary

judgment shall be granted if the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  A district court

may grant a defendant's motion for summary judgment when the plaintiff

fails to provide any genuine issue of material fact.  *See* Rule 56(c); *see also*

*Krouse v. Amer. Sterilizer Co.*, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The

moving party has the burden to establish before the district court that the

non-moving party has failed to substantiate its claims with evidence.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *see also Country Floors, Inc. v. Partnership Composed of Gepner*

*and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1990).  "The burden then shifts to

the non-movant to come forward with specific facts showing a genuine

issue for trial."  *See  Book v. Merski*, 2009 WL 890469, at *4 (W.D. Pa. Mar.

31, 2009)(citing *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*,

475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Williams v. Borough*

*of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989)("the non-movant

must present affirmative evidence—more than a scintilla but less than a

preponderance—which supports each element of his claim to defeat a

properly presented motion for summary judgment.")).  The non-moving

party is then charged with providing evidence beyond the pleadings to

show specific facts by affidavit or by information contained "in the filed

documents (i.e., depositions, answers to interrogatories and admissions) to

meet his burden of proving elements essential to his claim."  *Book*, 2009

WL 890469, at *4 (citing *Celotex*, 477 U.S. at 322; *Country Floors*, 930 F.2d at 1061).

Material facts are those whose resolution will affect the outcome of the case under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the Court is required to resolve any doubts as to the existence of material facts in favor of the non-moving party for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Firemen's Ins. Company of Newark, N.J. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment, therefore, is only precluded if a dispute about a material fact is "genuine", *viz.*, if the evidence would permit a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 247-249.

## DISCUSSION

Defendant offers several arguments as to why summary judgment should be granted in his favor. First, Defendant asserts that Plaintiff failed to exhaust his administrative remedies through his non-compliance with certain limitations periods; second, Defendant maintains that Plaintiff is not "disabled," was not regarded as such, and had no record of disability for the purposes of the Rehabilitation Act; and finally, Defendant argues that the

7

USPS had a legitimate, non-discriminatory purpose in refusing to transfer

Plaintiff.  The Court will address each issue.

### A. Timely Exhaustion of Administrative Remedies

Defendant maintains that Plaintiff waited 204 days (September 15,

2007 to April 7, 2008) after the first non-selection to initiate EEOC pre-

complaint counseling.  Defendant further maintains that Plaintiff waited 68

days (January 29, 2008 to April 7, 2008) after his second request for

transfer to a custodial position was denied before contacting the EEOC

office.  (*See* Def.'s Br. in Supp. Mot. Summ. J. 4, ECF Dkt. 47.)  Defendant

contends that such a delay constitutes an untimely exhaustion of the

administrative procedures that are required prior to a filing of an

employment discrimination lawsuit.  In *Robinson v. Dalton*, 107 F.3d 1018

(3d Cir. 1997), the Third Circuit recognized that the exhaustion requirement

is essential to the federal administrative EEOC process.  *Id.* at 1020.

EEOC regulations require that the employee first consult an EEOC

counselor within 45 calendar days of the date of the alleged discrimination

to initiate pre-complaint counseling.  *See* 29 C.F.R. § 1614.105(a).  Failure

to comply with the 45 day requirement constitutes a failure to exhaust

administrative remedies, and any federal claim that follows should be

dismissed.  *See Spence v. Straw*, 54 F.3d 196, 202 (3d Cir. 1995); *Hatcher*

*v. Potter*, 196 Fed. Appx. 120, 123 (3d Cir. 2006)(affirming dismissal of claim by district court for failure to comply with 45 day requirement).

Plaintiff argues that his non-compliance with the 45 day deadline mandated by the EEOC should be subject to equitable tolling. Equitable tolling may be appropriate when "(1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's [non-selection] and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)(citations omitted). As Plaintiff acknowledges in his opposition brief, equitable tolling is applicable if the "employee's failure to file results from 'a deliberate design by the employer or [from] actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" (*See* Pl.'s Br. in Opp. Mot. Summ. J. at 4, ECF Dkt. 54.) Plaintiff must also demonstrate that he "could not, by the exercise of reasonable diligence, have discovered essential information bearing on his . . . claim." *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 1994)(internal quotation marks omitted). Plaintiff bears the burden of establishing the applicability of equitable tolling. *See Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

Plaintiff avers that Franco misled him as to why Jones received the first custodial position in 2007, and that Franco admitted he made a mistake. (*See* Franco Dep. Tr. 49:4-7, ECF Dkt. 55-2.)  Plaintiff further avers that Franco lied to him and told him that Jones got the position because Jones had higher test scores. (*See* Savidge Dep. Tr. 28:5-18.) Plaintiff then claims that April 4, 2008, "was the date that Rick Franco discriminated against me because he had mentioned to John Wright that he didn't need no Gene Pollack, which is another disabled vet with a similar disability." (*See* Pl.'s Br. in Opp. Mot. Summ. J. at 4 (citing Savidge Dep. Tr. 30:14-24).)  Thus, there is a genuine dispute as to whether Plaintiff was "actively misled" by the actions of Defendant which in turn caused his failure to timely initiate his required pre-complaint counseling.  Under such circumstances, equitable tolling is appropriate, and Plaintiff should be permitted to further prosecute his claims.

B. Plaintiff's Disability and the Rehabilitation Act

A dispositive issue in this suit is whether Plaintiff qualifies as "disabled" under the Rehabilitation Act.  In *McDonald v. Com. of Pa., Dep't of Public Welfare, Polk Center*, 62 F3d 92 (3d Cir. 1995), the Third Circuit acknowledged that "[w]hether a suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining liability are the

same." *Id.* at 95 (citing *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995)).

Therefore, we analyze Plaintiff's discrimination claims according to the

familiar burden shifting approach of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973). *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d

Cir. 2000)("parties' burdens in establishing and defending claims" for

discrimination are determined by procedure set forth in *McDonnell Douglas

Corp. v. Green*). "Under this approach, the plaintiff must first establish a

prima facie case. The burden then shifts to the employer to articulate a

legitimate, nondiscriminatory reason for the discharge. If the defendant

does so, the presumption of intentional discrimination disappears, but the

plaintiff can still prevail by showing that the employer's proffered reason is

merely a pretext for discrimination." *James v. Sutliff Saturn, Inc.*, 10-4742,

*slip op.*, at *4 (3d Cir. Mar. 15, 2010). On summary judgment, Savidge may

meet his burden by "providing evidence that would allow a fact finder

reasonably to (1) disbelieve the employer's articulated legitimate reasons;

or (2) believe that an invidious discriminatory reason was more likely than

not the motivating or determinative cause of the employer's action." *See id.*

at 4-5 (citing *Sarullo v. United States Postal Service*, 352 F.3d 789, 799-

800 (3d Cir. 2003)(citations and internal quotations omitted)).

Plaintiff argues that the EEOC, interpreting the Americans with Disabilities Act Amendment Act ("ADAAA"), recognizes walking impairments as disabilities, and that this Court should do so as well. Plaintiff observes that the ADAAA "provides additional support that leg impairments such as the one that [Plaintiff] suffers from should be recognized" as a disability "affording protection under the Rehabilitation Act." (*See* Pl.'s Br. in Opp. Mot. Summ. J. 14.) Defendant counters that the ADAAA did not become effective, by its own terms, until January 1, 2009, "over a year and a half after the first non-selection and a year after the second non-selection." (*See* Def.'s Br. in Supp. Mot. Summ. J. 2 (citing Pub. L. 110-325, § 8, 122 Stat. 3559).) Plaintiff provides no authority holding that the ADAAA may be applied retroactively; in fact, the Courts of Appeal, including the Third Circuit, have held that the ADAAA is not to be retroactively applied. *See Britting v. Secretary, Dep't Veterans Affairs*, 409 Fed. Appx. 566, 569 (3d Cir. 2011); *see also Rhodes v. Principal Financial Group, Inc.*, 10-290, 2011 WL 6888684, *5, n.9 (M.D. Pa. Dec. 30, 2011)(ADAAA is not to be retroactively applied).

Although Plaintiff argues that there are material facts in dispute concerning whether he is disabled under the RA, Defendant does not dispute the physical limitations alleged by Plaintiff for the purpose of

deciding this motion.  In fact, Defendant addresses each specific factual allegation levied by Plaintiff and provides extensive case law in his Reply Brief to show, as a matter of law, that each of Plaintiff's ailments does not render Plaintiff "disabled" under the RA.

The Rehabilitation Act defines an "individual with a disability" as someone "who (1) has a physical or mental impairment that substantially limits his/her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Kania v. Potter*, 358 Fed. Appx. 338, 342 (3d Cir. 2009)(citing 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)).  A "substantial limitation" is a "significant restriction on a major life activity 'as compared to . . . the average person in the general population.'" *Id.* (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195-96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002))(internal citation omitted).  A major life activity is one that is "of central importance to daily life," *Williams*, 524 U.S. at 197, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. §1630.2(i), as well as "sitting, standing, lifting [and] reaching." *Kralik v. Durbin*, 130 F.3d 76, 78-79 (3d Cir. 1997)(quoting 29 C.F.R. § 1630)(alteration in original).

In the present matter, Plaintiff claims: (1) that he experiences daily body pain for which he takes medication and uses a TENS unit that shoots electrodes into his muscles (Savidge Dep. Tr. 15-17 (60:12-25; 61:62-6; 64:15-25; 65:1-11); (2) since 2007, he has not been able to take a long walk and is able to walk "a couple hundred feet[,]" which is "labor some" (sic) ((*id.* at 16 (63:20-25)); (3) nerve palsy causes his foot to drop, but he is able to walk with a brace that gives leg support (*id.* at 17, 19 (67:4-15; 68:16-19; 76:16-20)); (4) his leg occasionally becomes numb, but it does not prevent him from walking (*id.* at 17 (67:21-25; 68:1-6)); (5) he walks at a slower pace than others (*id.* at 50-51 (200:6-8; 202:7-9)); (6) he is able to climb and descend stairs, but at a slower pace (*id.* at 50 (200:8-12)); (7) he does not participate in "any outdoor activities for the most part[,]" but testified in 2007, that he hunted from a tree stand, into which he climbed 10-12 feet from the ground, and about fifty feet from his car, and in 2008, he walked approximately 100 feet into the woods to hunt (*id.* at 16, 21-22 (64:14; 83-87)); (8) in 2007, he was on limited duty and was permitted to sit to sort mail (*id.* at 15 (58:17-25; 59:1-20)); and (9) he is authorized to park in a handicap area (*id.* at 19 (75:24-25)).

With regard to walking, Plaintiff admits the following facts: (1) neither fibromyalgia nor nerve palsy prevented Plaintiff from walking in 2007 and

2008 (*id.* at 19 (74:8-10); *id.* at 20 (78:22-23; 79:5-7)); Plaintiff could climb a

ladder in both 2007 and 2008 (Def.'s SMF at ¶ 153, ECF Dkt. 46; Pl.'s Ans.

SMF at ¶153, ECF Dkt. 68); (3) Plaintiff's doctor did not restrict his ability to

walk in 2007 and 2008 (Savidge Dep. Tr. 20 (78:10-13; 80:1-3)); and (4)

Plaintiff could perform the essential functions of the custodial positions in

question "without accommodations" (Pl.'s Ans. SMF at ¶167).

Federal courts consistently hold that impairments comparable to

those presented by Plaintiff, and conceded by Defendant, do not, as a

matter of law, meet the high threshold required for a designation of

"disabled" under the RA. In *Johnson v. Amtrak*, 390 Fed. Appx. 109 (3d

Cir. 2010), the Third Circuit held that a plaintiff, who was a passenger

travelling on an Amtrak train and who suffered from diabetes and ulcerative

colitis, failed to demonstrate that he suffered from an impairment, under

both the ADA and RA, that substantially limited his ability to walk when he

was capable of walking "at least short distances, to restaurants and

restrooms."[1] *Id.* at 114. Similarly, in *Kania*, *supra*, the Third Circuit

affirmed a district court's determination that the plaintiff did not meet the

"demanding standard for qualifying as disabled" when in his deposition

testimony he indicated that he was capable of driving a car, could jog on a

---

[1] The Court notes that the basis for Johnson's suit was not employment discrimination, but a failure to accommodate; however, the analysis as to whether Johnson established a prima facie case of discrimination, with regard to a qualifying disability, is identical to the analysis which should be engaged in an employment matter.

limited basis, shop, and care for his son. *See Kania*, 358 Fed. Appx. at
342. The plaintiff also testified that he could "function even when his back
pain is sharp." *Id.*

In the matter *sub judice*, Plaintiff asserts that his walking is impaired,
but he does not demonstrate that a reasonable jury could find his injuries to
meet the high threshold required by the RA. In fact, the alleged disabilities
Plaintiff claims to suffer are substantially less severe than others which
have also been found insufficiently meritorious to constitute a disability by
the federal courts.

Defendant's Reply Brief also provides a precise analysis of the facts
as they have been treated in both the Third Circuit, and in other federal
courts, often in cases involving circumstances more severe, and ailments
more debilitating, than those described in Plaintiff's submissions. For
instance, in *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682 (8th Cir. 2003),
the Eighth Circuit held that a Plaintiff did not suffer from substantial walking
limitations when he could "only walk approximately one-quarter of a mile[,]"
had recurring numbness in his left foot and leg, walked with a cane, and
had his left leg collapse. *Id.* at 685. In *Bernitenetti v. Joy Mining Mach.*,
231 F. Supp. 2d 828, 834-35 (S.D. Ill. 2002), the Southern District of Illinois
found that a plaintiff's inability to walk more than 100 yards without stopping

did not constitute a sufficient limitation to establish a disability. Similarly,

the Fifth Circuit held in *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir.

1999), that a plaintiff's leg deformity, which caused the plaintiff to walk with

a noticeable limp and caused the plaintiff to walk at a "significantly slower

pace than the average person" was not a "substantial limitation." *Id.* at

1025.

In *Weber v. Strippit, Inc.*, 186 F.3d 907 (8th Cir. 1999), the Eighth

Circuit held that a plaintiff was not disabled under the ADA even though he

suffered from heart disease, could not walk long distances, and was unable

to climb stairs without becoming fatigued. *Id.* at 914. Similarly, in *Ingles v.*

*Neiman Marcus Corp.*, 974 F. Supp. 996 (S.D. Tex. 1997), the Southern

District of Texas held that a plaintiff suffering from diabetes, and missing

several toes, was not substantially limited in his ability to walk when he

could shop and perform daily activities. *Id.* at 1002. In the present matter,

at all relevant times, Plaintiff was able to walk and admits that he "could

perform the position of custodian without accommodations." (*See* Pl.'s

Ans. SMF ¶ 167; *see also* Savidge Dep. Tr. 107.)

Although Plaintiff feels numbness when he walks, the federal courts

have refused to recognize plaintiffs as disabled even when they felt

substantial pain when walking. *See, e.g., Barker v. Andrew Corp.*, No. 96-

C-1111, 1997 WL 803866, at *1-4 (N.D. Ill. Dec. 31, 1997); *see also Stone v. Entergy Services, Inc.*, No. 94-2669, 1995 WL 368473, at *2-4 (E.D. La. June 20, 1995)(holding plaintiff not "disabled" because he was unable to run, had trouble climbing and descending stairs, walked slowly, and suffered from muscle weakness and partial paralysis as a result of the residual effects of mild polio). In *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996), the Third Circuit affirmed a decision of the district court in which the court found that "moderate restrictions on the ability to walk are not disabilities" under the Americans with Disabilities Act ("ADA"). *Id.* at 106. While this Court is sympathetic to Plaintiff for the serious injuries he sustained while serving his country, as a matter of law, Plaintiff fails to demonstrate that a reasonable jury could find those injuries sufficient for him to be considered "disabled" under the RA.

Plaintiff's deposition testimony establishes that he was, *inter alia*, able to climb into a tree in the woods to hunt in 2007 and 2008. In *Penny v. United Parcel Service*, 128 F.3d 408 (6th Cir. 1997), the Sixth Circuit confronted a similar fact pattern and found, as a matter of law, that no reasonable jury could find the plaintiff substantially limited in his ability to walk given his hunting and fishing activities. *Id.* at 415. In the present matter, Plaintiff admits that he not only hunted in the woods, but that he

was able to climb into a tree stand.  This Court similarly finds that no

reasonable jury could hold that Plaintiff suffers from a qualifying disability

under the RA in 2007 or 2008.

With regard to working, Plaintiff asserts in his opposition brief that he

"was limited in the jobs he could perform in 2007-2008."  (*See* Pls.' Br. in

Opp. to Mot. Summ. J. 19 (citing Savidge Dep. Tr. 133:6-12).)  First,

Plaintiff's citation to his own transcript reveals that the period to which

Plaintiff refers is 2010, and not the relevant period of 2007 through 2008,

when he was not selected for the custodial positions.  *See Sever v.*

*Henderson*, 381 F. Supp. 2d 405, 414 (M.D. Pa. 2005)(citing *EEOC v.*

*Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000)(relevant time for

determining existence of substantial limitation of major life activity is at the

time of the adverse action)); *see also Walters v. Potter*, 05-1745, 2007 WL

693978, *7 (M.D. Pa. Mar. 5, 2007)(Plaintiff was required to demonstrate

that he qualified as disabled at the time of the alleged employment

discrimination).  In addition, Plaintiff testified that "since 2007 [he has been]

able to complete [his] job duties" provided he has assistance with moving

or lifting certain objects.  (*See* Def.'s SMF ¶¶164-165; Pl.'s Ans. SMF

¶¶164-165.)  Even more important, Plaintiff admitted he "could perform the

position of custodian without accommodation."  (*See* Pl.'s Ans. SMF ¶¶

167-168.) While Plaintiff argues that he was substantially limited in working for the years 2007 and 2008, he fails to offer any relevant evidence to substantiate this claim. Plaintiff asserts that he is disabled as to working, but at the same time argues that he can perform in the custodial position without accommodation. Accordingly, Plaintiffs own testimony and submissions to the record demonstrate that he is not precluded from working in a broad range of positions.

Similarly, Plaintiff fails to establish that he had a record of a disability because he does not provide any evidence to support such a claim. Plaintiff contends that his FMLA paperwork buttresses the allegation that he has a record of a disability; however, the content of Plaintiff's FMLA submissions does not address whether or how Plaintiff's fibromyalgia and nerve palsy substantially limit his ability to walk or to care for himself. The FMLA paperwork only notes that Plaintiff has an ability to work, is "conducting light duty," and requires additional leave time for medical treatment. In *Tice v. Centre Area Transp. Authority*, 247 F.3d 506 (3d Cir. 2001), the Third Circuit held that "[a] plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Id.* at 513. Plaintiff does not meet this burden.

Furthermore, the FMLA paperwork indicates that Plaintiff's conditions are "intermittine (sic) – episodes of incapacity due to chronic medical condition. However unable to predict the frequency of the episodes or length." (Pl.'s Br. in Opp. Mot. Summ J. 21-22.) As the Third Circuit noted in *McDonald v. Dep't of Welfare*, 62 F.3d 92 (3d Cir. 1995), "[i]ntermittent, episodic impairments are not disabilities." *Id.* at 96 (citing *Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 542 (7th Cir. 1995)).

Finally, Plaintiff presents evidence in his opposition papers raising a factual dispute as to whether Franco and the USPS regarded him as being disabled under the RA. Plaintiff points to two comments made by Franco including that he "did not want another Gene Pollack" and referencing Plaintiff's inability to climb a ladder as evidence of such a belief. Wholly apart from the fact that these comments' utterances are in dispute, and that Plaintiff learned of them through a fellow employee/union officer, the remarks themselves are sufficient to raise a genuine factual dispute as to whether that Plaintiff was regarded as disabled. The Third Circuit and the federal courts in Pennsylvania have generally held that a "stray remark," even if its existence is conceded, does not constitute an insurmountable barrier to summary judgment. "Stray remarks by non-decisionmakers or decisionmakers unrelated to the decision process are rarely given great

weight, particularly if they were made temporally remote from the date of decision." *Opsatnik v. Norfolk Southern Corp.*, No. 06-0081, 2008 WL 763745, * 12 (W.D. Pa. Mar. 20, 2008)(citing *Ezold v Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)). In a recent holding concerning age discrimination, the Middle District of Pennsylvania rejected the contention that "a single remark that might reflect the declarant's recognition of an employee's age in a context unrelated to the employee's termination is sufficient evidence to support a prima facie case of age discrimination . . . ." *Sanders v. Triangle Printing Co., Inc.*, 09-1851, 2010 WL 4365864, *9 (M.D. Pa. Oct. 6, 2010)(citing *Hyland v. Am. Int'l Group*, 360 Fed. App'x 365, 367-68 (3d Cir. 2010)). In the present matter, however, Franco is a decisionmaker who participated in the assessment of whether Plaintiff's requests should have been granted. In addition, the comments were not temporally remote from the decision to deny Plaintiff's requests. Thus, the comments raise a material dispute as to whether Franco and the USPS considered Plaintiff to be disabled.

Plaintiff asserts that Franco knew that Plaintiff walked with a limp, remarked that he did not want to hire another Gene Pollack, and commented that he Plaintiff could not climb a ladder. For the purpose of the instant motion, Defendant concedes each of these assertions; however,

Defendant maintains that these undisputed facts do not establish that
Franco, or any other USPS hiring official, *regarded* Plaintiff as being
substantially limited in any major life activity or incapable of performing a
variety of jobs. The Third Circuit has held that "[d]oubts alone do not
demonstrate that the employee was held in any particular regard, and, as
we have explained, inability to perform a particular job is not a disability
within the meaning of the Act." *Tice,* 247 F.3d at 515 (internal citations
omitted). Federal courts are uniform in their application of this rule: "An
employer's awareness of an employee's medical condition, standing alone,
is not evidence that the employer regarded the employee as disabled."
*Thorn v. BAE Sys. Hawaii Shipyards, Inc.*, 586 F. Supp. 2d 1213 (D. Hawaii
2008). Furthermore, "[t]he inability to perform a single job does not warrant
a finding that the plaintiff has a disability, instead, the plaintiff must
demonstrate that an entire class or range of jobs has been foreclosed."
*Horth v. Gen. Dynamic Land Sys.*, 960 F. Supp. 873, 878 (M.D. Pa.
1997)(citations omitted). Through his invocation of the alleged Gene
Pollack comments, Plaintiff has raised the possibility that Franco and the
USPS regarded Plaintiff as being precluded from performing in a broad
range of jobs. It is improper for the Court to make a factual determination
as to the credibility of these comments, or to speculate as to the reason

they may have been made.  Accordingly, we must refrain from entering summary judgment.

### C. Non-Discriminatory Reason for Denial of Transfer

Defendant posits that the USPS had a legitimate, non-discriminatory reason for not transferring Plaintiff to the two custodial positions he sought. Franco testified that Plaintiff was considered for the second custodial position, along with three other union members, but that all four requests, including Plaintiff's, were denied on the basis of unacceptable attendance records.  Defendant produced substantial records indicating the dates of Plaintiff's emergency absences, and noted that many of them followed previously scheduled vacation time.  (*See* Def.'s SMF ¶¶ 75-110.) Defendant insists that no FMLA certified time was counted toward Plaintiff's delinquencies.  Plaintiff argues that Defendant does factor FMLA time into its calculation regarding Plaintiff's unscheduled emergency leave, and that many of Plaintiff's unexpected absences were wrongly recorded in the attendance computer system so as not to reflect their FMLA status.

In support of Plaintiff's contention that his allegedly delinquent attendance record is the result of the USPS's failure to properly record Plaintiff's use of FMLA time, Plaintiff provides his FMLA paperwork (*see* Pl.'s FMLA Forms, ECF Dkt. 68-5) which demonstrates that he was

permitted to take intermittent leave in order to tend to various medical necessities.  Accordingly, the question as to whether Plaintiff's attendance was properly recorded by the USPS is one of genuine material fact that cannot be adjudicated on a motion for summary judgment, as it directly relates to the propriety of Defendant's refusal to grant Plaintiff's transfer request.

## CONCLUSION

For the reasons set forth in this memorandum, Defendant's Motion for Summary Judgment will be denied.  An appropriate order will follow.

DATE: March 30, 2012

Robert D. Mariani
United States District Judge

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY A. SAVIDGE** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:08-cv-2123** |
| | : | **(JUDGE MARIANI)** |
| **PATRICK R. DONAHOE,** | : | |
| **Postmaster General** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

On April 15, 2011, Defendant Patrick R. Donahoe filed a Motion for Summary

Judgment (Doc. 45).  For the reasons set forth in the accompanying memorandum, **NOW,**

on this **30th** day of **MARCH, 2012, IT IS HEREBY ORDERED THAT:**

1.  Defendant's Motion for Summary Judgment (Doc. 45) is **DENIED.**

Robert D. Mariani
United States District Judge